business or calling. Of course, the well-settled rule is that on demurrer a complaint is deemed to allege, in addition to its express allegations, any fact deducible or inferable therefrom by reasonable and fair intendment. The defendant cannot be expected to plead to a charge that he spoke the words of and concerning the plaintiff in her business or calling, unless it is so alleged, for his defense in the one case might be quite different from in the other. He might, if this were alleged, admit it, and plead that the communication was privileged, or facts in mitigation. Unless, therefore, such fact is necessarily charged by the allegations of the complaint, the complaint is demurrable. In my opinion, it is not charged that the words were uttered of and concerning the plaintiff in her business or calling as a domestic, because, for aught that appears, the defendant may not have been acquainted with her, may not have known her business or calling or that he was speaking to her employer, and he may have made the remark casually, passing upon her appearance or conduct upon the street, or in some public place.

I am of opinion, therefore, that the demurrer should have been sustained.

MILLER, J., concurs.

---

ROBERTS v. NEW & BEAVER ST. CORPORATION.

(Supreme Court, Appellate Division, Second Department.   April 29, 1910.)

1. BROKERS (§ 49*)—CONTRACTS NEGOTIATED—ACCEPTANCE.

Where a broker is authorized to negotiate a lease of property on specified terms to be improved, the improvements of which were not definitely settled upon, and he secured an offer to lease the premises upon other terms than those specified by the owners, and which referred to alterations in the premises to be executed in accordance with plans mutually agreed upon, the offer is not an acceptance of the owners' offer.

[Ed. Note.—For other case, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

2. CORPORATIONS (§ 426*)—CONTRACTS—POWER OF COMMITTEE TO BIND CORPORATION.

Where a committee acting for a corporation engaged a broker with the condition that any proposition submitted by the broker should be approved by the corporation's board of directors before he should be entitled to commissions, the fact that either one or all of the committee had, by virtue of their office, implied power to bind the corporation without a formal submission of a proposition to the board of directors, will not defeat the operation of the condition attached to the contract.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 426.*]

Appeal from Trial Term, Nassau County.

Action by Jacob R. Roberts against the New & Beaver Street Corporation. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Argued before HIRSCHBERG, P. J., and BURR, THOMAS, RICH, and CARR, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Kendall & Herzog and William Hepburn Russell, for appellant.
James W. Hyde, for respondent.

CARR, J. The plaintiff has recovered a judgment for $6,670.38 against the defendant for damages and costs arising from an alleged breach of a contract of brokerage between the plaintiff's assignor and the defendant for the leasing of some real property owned by the defendant in the city of New York. The plaintiff's assignor, Sussman, was a real estate broker, doing business in New York City. His attention was called to the fact that the defendant was offering for sale a piece of real property at the corner of New and Beaver streets. This information came to him from a circular letter sent out by one George Rosenfeld, who was an officer of the defendant corporation, but who was also engaged in the business of operating in real estate. The circular letter did not relate exclusively to the real property of the defendant, but referred to many other parcels in which the defendant had no interest. According to the plaintiff's story, he made some attempt either to sell or exchange the defendant's parcel, but without avail. Then, as he testifies, he discussed with Rosenfeld a proposition to improve the buildings on the parcel owned by the defendant and to let out the premises for a term of years. After some discussion, as he claims, the proposition was entertained by the defendant, but without defining the details in full. Thereupon he submitted to it a tentative proposition from one Peiser, and thereafter he received a telegram from Weinberg, an officer of the defendant, fixing a meeting at the home of Rosenfeld for further discussion. When this meeting took place, there were present Weinberg, Rosenfeld, and Sussman. Whatever contract of brokerage was made between the parties was made then and there, if at all. There is a sharp conflict between the witnesses as to many important details of the conversation which then took place, but likewise a substantial agreement as to others. Sussman's story is that Rosenfeld, who was the defendant's president, reduced to writing the terms on which the defendant would lease its property, and then agreed to pay him as broker a commission of 1 per cent. on the full amount of the rent for a lease to run 20 years, if he should procure a customer ready, willing, and able to take a lease on the terms so defined. These terms, according to Sussman, contemplated the alteration of the then building on the premises by adding two additional stories, putting in an elevator, changing the ground floor to convert it into a large store, and adapting the upper floors for office purposes. The defendant was to contribute to the expense of the alterations and improvements the sum of $50,000; the balance of the required cost to be paid by the tenant. The lease was to run for 20 years at an annual rent of $30,000, in addition to which the tenant was to pay all taxes, water rates, and insurance in order that the annual rent should equal a net income of 5 per cent. on the sum of $600,000. The lease was to contain a clause allowing the defendant to cancel the letting during the first five years of the lease on one year's notice, provided that the defendant should pay the tenant $20,000 and 50 per cent. of the amount expended by him in making the alterations and improvements; likewise, a privilege to cancel at the end of 10 years on payment to the

tenant of the sum of $15,000, together with one-third of the tenant's share of the expenses of the improvements, and likewise a further privilege of cancellation at the end of 15 years on payment of the sum of $10,000 in full. It was further provided that security satisfactory to the defendant should be given by the tenant for the carrying out of the terms of the lease. While, as Sussman claims, these terms were all reduced to writing, he got no copy thereof, but relied upon his memory of them entirely. A few days after this meeting, he submitted to Rosenfeld a writing signed by one Heyman, containing an offer to take a lease of the premises on terms therein specified. There was, however, a substantial difference in the offer or proposition of Heyman from the terms said to have been defined at Rosenfeld's house in this particular: That Heyman's offer was on condition that, if the proposed lease was canceled by the defendant at the end of 15 years, then the defendant was to pay the tenant $10,000 and 25 per cent. of the amount expended by the tenant in making the improvements required. With this offer of Heyman was submitted a list of parcels of real estate in which he claimed an interest, together with the names of banks and individuals to which he referred for the purpose of ascertaining his financial standing. Sussman testified that when he submitted Heyman's writing to Rosenfeld, although it was addressed in form to Weinberg, Rosenfeld declared that it was satisfactory, but that he would have to look into the question of references and security before directing the preparation of the lease. This occurrence took place on the morning of November 27, 1907. On the next day, he, Sussman, received a letter from Rosenfeld, declining the proposition of Heyman, and assigning as a reason therefor that upon inquiry he, Rosenfeld, had ascertained that the probable cost of the alterations and improvements would be $80,000, and that it would not be a profitable enterprise for the defendant to undertake. Sussman claims that he then called upon Rosenfeld, and informed him that he had good reason to believe that the whole work could be done for $50,000; that he had procured an estimate from Schwartz & Gross, a firm of architects, that the work could be done for $50,000; and that thereupon Rosenfeld said:

"If you can bring me that in writing from Schwartz & Gross, that these alterations will not be more than $50,000 or $60,000—that it can be done for that—I shall then withdraw this reason I have told you, and close the lease."

Sussman then procured a letter from Schwartz & Gross, in which they stated that "we approximate the cost not to exceed $60,000, including our fee." Rosenfeld made no reply, and, in answer to an inquiry from Sussman, subsequently declared that the negotiations were at an end. Assuming this state of facts to be established by the evidence, the plaintiff claims that Sussman had performed his contract and became entitled to his commissions. At the time of Heyman's offer, no plans had been prepared by or for the defendant for the alterations in the building. Heyman's writing referred to the alterations "to be executed in accordance to plans mutually agreed upon." When called as a witness, Heyman testified, on this point, as follows:

"When I submitted the proposition, I did not submit the plan for the alter-ations. I did not have any plans drawn up. I heard from Mr. Sussman that the architect gave him plans. All that I know was that Mr. Sussman said that Schwartz & Gross estimated that it could be done for $60,000, including their commission."

According to the undisputed evidence, Schwartz & Gross had no con-nection with the defendant, and no authority to estimate as to the cost of the alterations on the part of the defendant. There were then no plans "mutually agreed upon" in the sense of Heyman's offer, and these words must have been intended to mean "plans to be mutually agreed upon." In other words, Heyman's writing was not an acceptance of a complete proposition already defined by the defendant, but was, on the contrary, at most, but a counter offer on his part, both as to altera-tions yet to be agreed upon, as well as to the amount to be paid on the cancellation of the lease at the end of 15 years. If the plaintiff stands upon Heyman's written offer alone as a performance of the contract of brokerage made with Sussman at Rosenfeld's home, then Sussman has not performed, for Heyman's offer does not fulfill that contract, as pleaded in the complaint and as testified to by Sussman himself on the witness stand.

The plaintiff, however, goes a step further, as he is obliged to do at the peril of defeat in his action. He claims, through Sussman, that Rosenfeld accepted Heyman's offer as satisfactory, reserving only the question of the security offered, and on this acceptance he seeks thus to bind the defendant on the implied authority of Rosenfeld as its president, for it is not proved that any of the other officers or directors took part in the alleged acceptance of Heyman's offer. Rosenfeld de-nied that he ever accepted this proposition. There were three directors of the defendant company—Rosenfeld, Weinberg, and Abenheim. Two of them were present when the alleged contract of brokerage was entered into, Rosenfeld and Weinberg. There is no proof that either Weinberg or Abenheim knew of, or consented to, any acceptance by Rosenfeld of Heyman's written offer, or that there was any express authority given by the defendant corporation to Rosenfeld to act alone for it under these circumstances. The defendant's proof as to the con-tract of brokerage, and what followed, differs very materially in some important aspects from Sussman's story. Both Rosenfeld and Wein-berg testified that at the meeting at Rosenfeld's home no terms were reduced to writing, but that the meeting was called to consider a prop-osition which Sussman had submitted on behalf of one Peiser, who, being called as a witness on the trial, denied that he had ever authorized Sussman to submit any proposition at all. They testified further that, in discussing the supposed proposition of Peiser, they told Sussman to submit a written proposition from Peiser, which they, in turn, would submit to the board of directors of the defendant, and that it must be understood that all negotiations as to leasing the property must be had subject to the subsequent approval by the defendant's board of directors, of a proposition submitted to them in writing, and that, in the event of the failure to obtain such approval, Sussman was to have no commissions. The proposition as to leasing the premises, rather than of selling or exchanging them, was Sussman's scheme, originated

by himself alone.   If he could bring to consummation a lease that would be satisfactory to the board of directors, he was to have commissions; otherwise he was to have none.   When the case went to the jury, the court was requested to charge as follows:

"Defendant's Counsel: I ask your honor to charge in behalf of the defendant, the New & Beaver Street Corporation, that if the jury find that plaintiff's assignor, Sussman, was told by Rosenfeld and Weinberg, that any proposition must be submitted to the board of directors of the corporation and be approved of by them before it could become binding and be accepted, and, if no proposition was so submitted and approved, then plaintiff cannot recover."

To which the court replied:

"The court so charges with, however, this proviso: That if, on the other hand, the jury find that these gentlemen whom you have named were a committee, or were authorized to act for the corporation in what they did, then, as agents of the corporation, whatever they did, would be binding on the corporation, if they did anything."

The counsel for the defendant then excepted as follows:

"I except to the court's modification as inconsistent with the request itself, and not based on any evidence whatever in the case."

It is urged now on this appeal that the modified instruction of the trial court was erroneous, in that it was misleading on the issue tendered to the jury for decision.   The learned counsel for the plaintiff appears to have been somewhat uncertain himself as to the meaning of this instruction, for the record shows the following happening:

"The Plaintiff's Counsel: I except to your honor's charge that the jury must find that, before the contract was completed, it must have been submitted to the corporation. I may not have gotten your honor's charge correctly.

"The Court: If the jury should find that Weinberg, Rosenfeld, and Abenheim were acting for the corporation, authorized to act for the corporation, the defendant is bound just as positively as the defendant would be bound if a formal meeting had been had and a resolution passed by the entire directorate."

This was an interpretation by the court of its meaning in the modified instruction given in answer to the defendant's request.   As an abstract rule of law, it may have been good enough.   Yet, as fitted to the question at issue, it may have been so misleading as to confuse the jury.   There was no proof whatever that either Weinberg or Abenheim had acted in any way for the corporation after the receipt of Heyman's written offer.   Rosenfeld alone is claimed to have had anything to do with its acceptance or rejection.   Assuming, however, that Rosenfeld, Weinberg, and Abenheim had engaged Sussman as a broker, yet, if they had annexed to such engagement or agreement the condition that any proposition submitted by him should be approved by the defendant's board of directors before he should be entitled to commissions, that condition precedent could not be defeated simply because either or all of them had, by virtue of their office, implied power to bind the corporation without a formal submission of a proposition to the board of directors.   An instruction to the jury as to the rule of law applicable to the controversy should have a definite relation to that

precise controversy. Here the question was as to the terms of the contract of brokerage. If this contract contained the condition testified to by the witnesses Rosenfeld and Weinberg, then it was not fulfilled by the alleged acceptance of Rosenfeld alone, even though he had by implication of law power to bind the corporation by his own act if the contract of brokerage had been unconditional. It seems to me that this instruction of the learned trial court could have had no other result than to confuse the jury on this crucial point of the controversy. The circumstances of the case were peculiar. Sussman, not the defendant, originated the scheme to lease the property. At the time he brought forth his project at Rosenfeld's home, it is doubtful, to say the least, whether he had any intending customer. He claimed to have been authorized by Peiser to submit a proposition, but Peiser on the witness stand repudiated such claim of authority. The proposition of improving the property involved considerable expenditure and certainly a defined plan of alteration of the buildings. There was nothing inherently improbable in the position of the defendant's witnesses under these circumstances that they should annex to the contract of brokerage a condition that the corporation should not be deemed bound until its board of directors should accept a proposition then not made by any person, and never made thereafter, in strict accordance with the terms discussed at that time. The defendant was entitled to have the jury instructed clearly on this point, and the charge of the trial court in this particular did not answer the requirement.

I recommend that the judgment and order be reversed and a new trial granted, costs to abide the event. All concur.